IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WAYNE JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>THE BLUE BIRD CORPORATION,<br><br>*Defendant.* | CIVIL ACTION NO.<br>5:17-cv-00101-TES |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Wayne Jackson alleges that his former employer, Defendant The Blue Bird Corporation, discriminated against him on the basis of race and retaliated against him when he reported this alleged discrimination. Plaintiff brought these claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. Defendant filed a Motion for Summary Judgment [Doc. 10] arguing that Plaintiff's claims are legally deficient.

For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A fact is material if it "might affect the outcome of the suit." *Id.* When considering a motion for summary judgment, "the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255. However, the Court need not draw "all possible inferences" in favor of the nonmovant. *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011).

The movant "bears the initial burden of informing the district court of the basis for its motion[] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (internal quotation omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant "to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Id.* (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2012)).

## FACTUAL BACKGROUND

Defendant employed Plaintiff, who is African-American, as a Line Shift Supervisor at Defendant's assembly plant in Fort Valley, Georgia. [Doc. 1, at ¶¶ 10-14]. Defendant initially hired Plaintiff to work the day shift at the assembly plant, but transferred Plaintiff to the night shift in February 2016. [*Id.*]. Around the time Plaintiff began working the

2

night shift, Defendant transferred Jerry Rowland, a white employee, from one of its nearby manufacturing facilities to act as the Plant Manager for the night shift. [*Id.* at ¶ 22]. Prior to the transfer, one of Defendant's employees, identified as Mr. Gibson in the pleadings, filed a complaint with Defendant against Rowland for "physically reprimanding" him. [*Id.* at ¶¶ 18-21]. Defendant did not discipline Rowland following that complaint. [*Id.*] As Plant Manager, Rowland supervised Plaintiff. [*Id.* at ¶ 23].

Plaintiff alleges that he observed Rowland treat African-American employees with a "more aggressive and dismissive tone." [*Id.* at ¶ 27]. Rowland, after his transfer to the Fort Valley plant, was the subject of another complaint for "openly chasti[sing] an African-American Line Shift Supervisor over [Defendant's] two way [sic] radio system." [*Id.* at ¶ 29-32]. As far as Plaintiff knew, Defendant did not punish Rowland for this incident. [*Id.* at ¶ 33].

During the summer of 2016, three of the employees under Plaintiff's control suffered workplace injuries. [Doc. 20, at 2-6]. The first incident involved William Harris who, on June 2, reported to Jordan Dorrien, an employee in Defendant's medical center, that he had a skin irritation. [*Id.* at 5]. On July 28, Dorrien learned that Harris' rash had spread. [*Id.*]. Dorrien, believing the rash was caused by insulation, asked Shelby Hill, a night shift manager, to move Harris away from insulation. [*Id.*]. Hill indicated that he would speak with Plaintiff about moving Harris. [*Id.*]. On August 10, Harris reported to Dorrien that he had not been moved. [*Id.*].

3

The second incident involved Lamontre Spivey, who sought treatment in Defendant's medical center after feeling nauseous and dizzy, but found that it was closed. [*Id.* at 2]. Spivey then went to Plaintiff's office where Plaintiff gave him some water and offered him a break. [*Id.*]. After 10-15 minutes, Spivey returned to work. [*Id.*]. Shortly after returning to work, Spivey became ill and again sought care from the medical center. [*Id.*]. Since the medical center was still closed, Spivey went to his truck, and after vomiting, drove himself to the hospital where he was diagnosed with double kidney failure. [*Id.* at 3]. Hill informed Rowland of the Spivey incident in a nightly recap of that shift's events. [*Id.*]. Rowland investigated the incident by speaking with Dorrien and Plaintiff. [*Id.* at 4].

The final incident involved Michael Jackson, who sustained a cut to his leg. [*Id.* at 4]. When Jackson went to the medical center, he told Dorrien that Plaintiff and another manager had discouraged him from seeking care. [*Id.*]. Rowland investigated this claim and Plaintiff and the other manager told Jackson they had been kidding when they discouraged him from seeking care. [*Id.* at 5].

Rena Hart, Defendant's former Director of Environmental Safety,[1] conducted an investigation of each of these incidents and, based on her investigation, recommended that Defendant fire Plaintiff.[2] [*Id.* at 6]. Hart claims she made this recommendation on

---

[1] Hart made her recommendation to Mike McCurdy, Defendant's former Vice President of Human Resources. Hart is no longer employed by Defendant. [Doc. 16, at ¶ 2].

[2] In his Brief in Opposition to Defendant's Motion for Summary Judgment [Doc. 20], Plaintiff disputes the validity of Hart's statements based on her failure to submit the notes of her investigation. Plaintiff does not offer any evidence to call into question the substance of Hart's testimony.

4

August 18, 2016. [*Id.*]. The day before Hart's recommendation, Plaintiff requested a meeting with Rowland, Hill, and a human resources representative because he felt he was being falsely accused with respect to his job performance and his conduct during the Harris, Spivey, and Jackson incidents. [*Id.* at 7]. Plaintiff met with Rowland and McCurdy on August 30 and told them "he felt unfairly blamed for the medical issues and believed it was motivated by his race."[3] [*Id.*].

Two days after the meeting with Rowland and McCurdy, Rowland and Hill asked Plaintiff if he planned on working Labor Day weekend. [*Id.*]. Plaintiff responded that he had previously informed them via email that he would not be able to work that weekend but expressed a willingness to try to resolve his scheduling conflict. [*Id.* at 8]. Rowland told Plaintiff that was unacceptable, asked for Plaintiff's employment badge, and sent him home for the day pending further instructions. [*Id.*]. The following day, Plaintiff sent an email to Phil Horlock, Defendant's President and CEO, alleging that he had been discriminated against on account of his race. [*Id.*].

Following this incident, Plaintiff requested and received FMLA leave from September 5 through October 3, 2016. [*Id.*]. Plaintiff then used vacation time to extend his leave from October 3 to October 10. [*Id.*]. During his leave, Plaintiff filed formal, internal

---

[3] McCurdy denies that Jackson asserted he was being discriminated against. [Doc. 15, at ¶ 7]. Rowland stated that he only remembered discussing an unrelated safety concern in the meeting. [Doc. 14, at 76:19-20]. However, applying the summary-judgment standard, the Court must construe these facts in the light most favorable to the non-moving party. *See Horn*, 433 F. App'x at 796.

5

complaints alleging discrimination and retaliation. [*Id.*]. In response, Defendant assigned Philomena Washington, a human resources specialist, to investigate Plaintiff's complaints. She directed Plaintiff to remain at home during the investigation. [*Id.*]. Washington ultimately concluded that Plaintiff's allegations were without merit. [Doc. 18, at 12]. Citing poor job performance, Defendant terminated Plaintiff on October 24, 2016. [Doc. 20, at 9].

Plaintiff filed suit on March 15, 2017, asserting claims for employment discrimination and retaliation. [Doc. 1]. In his discrimination claim, Plaintiff alleges that he was subject to disparate treatment when Defendant directed him to remain on leave during the investigation of his formal complaint while Rowland, the subject of the complaint, was allowed to report to work. [*Id.* at ¶ 70]. In his retaliation claim, Plaintiff contends that his comments to Rowland and McCurdy regarding his concerns of unfair treatment and his formal complaint were protected activity and, as a result of engaging in this protected activity, he suffered adverse employment action when, on September 1, 2016, he was asked to leave his shift early and then again on October 24, 2016, when he was terminated. [*Id.* at 61].

## LEGAL AUTHORITY AND ANALYSIS

### A. Plaintiff's Race Discrimination Claim Under Title VII

The Court first considers Plaintiff's claim of racial discrimination. The parties agree that this case is governed by the *McDonnell Douglas* burden shifting framework for

analyzing claims of discrimination supported only by circumstantial evidence. *See* [Doc. 20, at 19; Doc. 10-1, at 7]. Under this familiar framework, if a plaintiff establishes a *prima facie* case, a presumption of discrimination arises in his favor. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973). Defendant can rebut this presumption by providing a non-discriminatory explanation for its conduct after which, Plaintiff can show that the explanation was merely pretext for Defendant's true discriminatory motive. *Id.* at 802.

A plaintiff establishes a *prima facie* case of disparate treatment when he shows, by a preponderance of the evidence, that he (1) is a member of a protected class; (2) was qualified for the position he held; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly-situated employee outside the protected class. *Flowers v. Troup Cty.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)). Defendant concedes that Plaintiff is a member of a protected class and was qualified for the position he held. [Doc. 10-1 at 8]. However, because Plaintiff failed to offer any evidence that he was treated less favorably than a similarly-situated employee, Defendant is entitled to summary judgment on Plaintiff's discrimination claim.[4]

---

[4] Although the Court's decision rests primarily on Plaintiff's failure to proffer a valid comparator, the court would have nonetheless granted summary judgment to Defendant because the Plaintiff also failed to show that he suffered an adverse employment decision. Placing Plaintiff on a brief, paid leave during the investigation is not adverse employment activity. *See Brown v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:14-CV-0365-LMM-LTW, 2016 WL 4925792, at *9 (N.D. Ga. Feb. 12, 2016) ("Typically, courts within this circuit have concluded that a paid suspension or placement on administrative leave for less than a month is not an adverse employment action."); *Carrio v. Apollo Grp.*, No. 1:07–CV–1814–BBM, 2009 WL 2460983, at *15

7

To survive a motion for summary judgment, a plaintiff alleging disparate treatment must identify a comparator that was "similarly situated in all relevant respects" who received different treatment. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff failed to identify such an employee. The closest Plaintiff came to identifying an appropriate comparator was alleging that "Defendant engaged in disparate treatment by allowing Mr. Rowland, a Caucasian male and the subject of a race discrimination complaint, to report to work while requiring Plaintiff, an African-American male and the aggrieved party, to remain on leave." [Doc. 1, at ¶ 70]. This allegation falls well-short of the similarity required for a valid comparator.[5]

For starters, Rowland was the subject of the investigation, not the complainant. Although it might seem strange for Defendant to permit the alleged wrongdoer to

---

(N.D. Ga. Aug. 7, 2009) (listing cases finding that placement on brief, paid, administrative leave is not adverse employment action).

[5] Plaintiff's response to Defendant's motion for summary judgment attempts to alter the allegations of his complaint. Specifically, Plaintiff argues—for the first time—that his termination was the adverse employment action for his disparate treatment claim and that Hill was a similarly situated employee that was not terminated following the medical incidents outlined above. Because Plaintiff "may not change or create new claims in his response to a summary judgment motion," the Court considers only the claims alleged in Plaintiff's complaint. *Minnifield v. City of Birmingham*, No. 2:14-CV-789-KOB, 2015 WL 5675738, at *7 (N.D. Ala. Sept. 28, 2015) (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)).

Even if Plaintiff had properly alleged that Hill is a valid comparator, the Court would conclude that he is not. Hill was Plaintiff's supervisor, was not involved in anyway with the Jackson incident, and had only passing involvement in the Spivey and Harris incidents. Accordingly, the "quality and quantity" of Hill's involvement in these incidents was not "nearly identical" to Plaintiff's involvement. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.")

continue his employment uninterrupted, such a decision does not itself amount to disparate treatment. To survive Defendant's motion, Plaintiff needed to identify an individual outside of his protected class that filed a similar complaint but was not required to take leave while the complaint was investigated. This he did not do.

Moreover, even if Rowland had been on the other side of the investigation, he cannot be a valid comparator in this case because he was Plaintiff's supervisor. "Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). *See also Mathis v. Wachovia Bank*, 255 F. App'x 425, 431 (11th Cir. 2007) (holding that bank teller and teller supervisor were not similarly situated); *Abram v. Von Maur, Inc.*, 719 F. App'x 929, 932 (11th Cir. 2018) (holding that employees with different positions were not similarly situated); *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000) ("[Comparator] was one of [Plaintiff's] supervisors and therefore cannot be deemed similarly situated in a disciplinary matter such as this one."); *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 561 (8th Cir. 1997) ("[O]ur finding that [Plaintiff] and [comparator] were not similarly situated is bolstered by the fact that they did not hold the same position."). The parties do not dispute that Rowland was Plaintiff's indirect supervisor with at least one level of management between them. Accordingly, Rowland is clearly not an appropriate comparator. [Doc. 1, at ¶ 23, 39].

Plaintiff attempts to sidestep this hurdle by arguing that the similarly-situated

requirement "does not mean that they must share the same job, duties and experience." [Doc. 20, at 10]. Plaintiff relies on the Eleventh Circuit's direction that "the relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies."[6] *Lathem v. Dept. of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (quoting *Nix v. WLCY Radio/Rhall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984)). In *Lathem*, a lower-ranked employee at the Georgia Department of Children and Youth Services offered her supervisor as an appropriate comparator after they both violated the Department's anti-fraternization policy and yet received different punishments. *Id.* The court of appeals concluded that the supervisor was a valid comparator because the anti-fraternization policy applied to both the Plaintiff and the supervisor. *Id.*

"The holding in *Lathem*, however, only extends so far." *Ham v. Ga. Pub. Safety Training Ctr.*, No. 5:08–CV–384 (CAR), 2010 WL 3937340, at *10 (M.D. Ga. Sept. 30, 2010). To this end, the Eleventh Circuit has recognized that sometimes "rank clearly matters." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1281 (11th Cir. 2008). In concluding that rank mattered, the Eleventh Circuit emphasized that the plaintiff and proposed comparator were multiple degrees removed from each other in the defendant employer's management hierarchy. *Id.* The *Rioux* court also noted that while there were only three

---

[6] Plaintiff misattributes this quote to *Burke-Fowler v. Orange Cty.* 447 F.3d 1319, 1323 (11th Cir. 2006). As noted above, the quoted language is actually from *Lathem*. 172 F.3d at 793.

10

employees that held the plaintiff's rank, there were 30 employees that held the same position as the proposed comparator. *Id.* Applying these factors to the present case, it is evident that Rowland simply is not a valid comparator. He is removed from Plaintiff's position by multiple degrees in Defendant's management hierarchy and he is the sole night shift plant manager while Plaintiff was one of ten line-shift supervisors. The Court finds that in this case, "rank clearly matters." Accordingly, the general rule that a supervisor is not a valid comparator applies here, not the *Lathem* exception.

Because the Court concludes that Plaintiff failed to offer a valid comparator to support his disparate treatment claim, Defendant is entitled to summary judgment on this claim.

### B. <u>Plaintiff's Retaliation Claim</u>

The Court next considers Plaintiff's retaliation claim. Retaliation claims are also governed by the *McDonnell Douglas* framework described above. 411 U.S. at 901-02. "To establish a *prima facie* case of retaliation under Title VII, [Plaintiff] must show (1) that [he] engaged in statutorily protected expression; (2) that [he] suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

Defendant maintains that Plaintiff has failed to create a dispute of material fact as to any of the above elements so that the Court should grant summary judgment in its

11

favor. [Doc. 10-1, at 10-14]. Because the Court concludes that Plaintiff failed to satisfy the causation element of his claim, the Court need not decide whether Plaintiff engaged in statutorily protected activity. *Tucker v. Fla. Dep't of Transp.*, 678 F. App'x 893, 896 (11th Cir. 2017) (holding that the court need not consider other elements of retaliation claim when a plaintiff does not provide sufficient evidence of causation) (citing *Thomas*, 506 F.3d at 1364)).

On the issue of causation, Plaintiff argues that the temporal proximity of the adverse employment action to the filing of his internal complaints is sufficient evidence of causation to survive a motion for summary judgment. [Doc. 20, at 12-13]. Plaintiff correctly states that temporal proximity is generally sufficient evidence to survive a motion for summary judgment. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (overruled on other grounds)). However, there is no "sufficient evidence" when the record contains unrebutted evidence that a defendant intended to terminate the employee prior to the employee engaging in protected activity. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) ("We emphasize that Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint."); *Tucker*, 678 F. App'x at 896 ("Temporal proximity between the protected activity and the adverse action alone generally cannot show causation when the employer

12

has contemplated the adverse action before the protected activity takes place."); *Drago v. Jenn*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that there was no jury question on causation when record evidence was overwhelming that employer intended to take adverse action prior to complaint).

In this case, the record evidence is overwhelming and unrebutted that Plaintiff was "on thin ice" and that Defendant had "contemplated the adverse activity before the protected activity took place." *Alvarez*, 610 F.3d at 1270; *Tucker*, 678 F. App'x at 896. As an initial matter, Plaintiff does not dispute that, at the time he requested the August 30 meeting, there were allegations that he was denying medical care to the employees he was supervising. [Doc. 13, at 75:7-10]. Such allegations, if accepted by the employer, are undoubtedly sufficient to have put Jackson on "thin ice." This is particularly true in light of the fact that Plaintiff was responsible for the safety of those he supervised and it was alleged that his conduct almost caused Spivey's death. [Doc. 20-1, at ¶ 3; Doc. 10-2, at ¶ 3]. Furthermore, Plaintiff admits that the August 30 meeting primarily focused on his job performance and that he was informed that the accusations against him could result in him losing his job. [Doc. 13, at 75:3-6; 78:17-79:11].[7] On these facts alone, "[t]he record [] establish[es] that [Defendant] had legitimate non-discriminatory reasons to fire [Plaintiff]

---

[7] In this part of his deposition, Plaintiff acknowledged a signed statement he provided to Washington during her investigation of his formal internal complaint. Plaintiff disputes the completeness of this account, but not the accuracy of the statements that it does include. [Doc. 13, at 75:3-6; 78:17-79:11].

13

before [he] complained, and it remained free to act on those reasons afterward." *Alvarez*, 610 F.3d at 1270.

Further, the record contains unrebutted evidence that Hart, Defendant's former Director of Environmental Safety, investigated these allegations and advised Defendant to terminate Plaintiff's employment.[8] Defendant also offered the testimony of McCurdy who testified that he relied on Hart's recommendation and was prepared to terminate Plaintiff's employment until Plaintiff indicated that he would consider resigning. [Doc. 15, at ¶¶ 3-4]. Although Plaintiff vehemently disputes the substance of the Hart investigation and the subsequent recommendation to McCurdy, his objections are unavailing.

Specifically, Plaintiff argues that because Defendant did not offer documentation of the investigation, it did not occur. [Doc. 20, at 14]. However, Plaintiff's insinuation that Hart is lying about conducting the investigation misses the point. Even if the Court were

---

[8] Specifically, Hart testified in her declaration that:

> Based on my investigation of these issues and the employee complaints, I concluded that Jackson's employment should be terminated because he did not conduct himself in an appropriate manner with [the three medical incidents outlined above]. I reported my recommendation to Human Resources including Michael McCurdy, who was the Vice President of human resources at the time. Mr. McCurdy agreed and accepted my recommendation.
>
> It is my understanding that Wayne Jackson requested a meeting with McCurdy after I made my recommendations. McCurdy told me after the meeting that he did not fire Jackson during the meeting because Jackson said that he would resign, and McCurdy preferred a resignation over a termination.

[Doc. 16, at ¶¶ 14-15].

14

to assume that the investigation did not occur, the unrebutted evidence is that Hart recommended to McCurdy that he terminate Plaintiff's employment and that McCurdy intended to act on that recommendation even before Plaintiff had voiced his allegations of discrimination. [Doc. 15, at ¶¶ 3-4]. The basis—or lack thereof—for Hart's recommendation is irrelevant. Instead, the relevant inquiry is the subjective belief of the decisionmaker (in this case McCurdy) not "reality as it exists outside [the decisionmaker's] head." *Alvarez*, 610 F.3d at 1266. Thus, even if McCurdy unwittingly relied on a recommendation that was based on a fraudulent investigation, Plaintiff would still fail to show that his termination was motivated by racial animus or retaliatory intent. Because Plaintiff failed to provide sufficient evidence to demonstrate a *prima facie* case of retaliation, Defendant is entitled to summary judgment on this claim.

For the above stated reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 10]. Therefore, this case is **DISMISSED**.

**SO ORDERED** this 30th day of August, 2018.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**